## INDIANAPOLIS STREET RAILWAY COMPANY v. DAWSON.

[No. 4,529. Filed November 17, 1903.]

STREET RAILROADS.—*Conspiracy to Assault Colored People at Company's Park.—Knowledge of Danger.—Liability.—Evidence.—Notice.*—A street railway owned a park adjacent to a city where it maintained attractions for the public. The company had knowledge of a conspiracy on the part of certain persons to assault and insult colored people who might visit the park, but nevertheless transported plaintiff, a colored man, to the park without warning him of his danger. Upon arriving at the park, plaintiff was assaulted by the conspirators, the employes of the railway company, though present, making no attempt to interfere. *Held*, that the street railway company was liable; and that evidence of similar occurrences was admissible to show notice.

From Superior Court of Marion County; (62,656) *Vincent G. Clifford*, Special Judge.

Action by George J. Dawson against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter, C. Winter* and *W. H. Latta*, for appellant.
*I. D. Blair* and *O. V. Royall*, for appellee.

ROBY, J.—Action by appellee. Verdict and judgment for $500. Demurrers to first and second paragraphs of complaint overruled. Motion for a new trial overruled.

It is averred in the first paragraph of complaint, in substance, as extracted from a multitude of words, that appellant was on August 25, 1901, a corporation operating a street railway system in Indianapolis and was a common carrier for hire; that it owned a park near said city, and maintained certain attractions therein to induce persons to ride on its cars, inviting them to said park; that on

the day named it gave a free band concert therein, the same having been extensively advertised prior thereto; that on said day appellee, accompanied by a lady, took passage upon one of its regular cars, and was conveyed to said park; that a large number of persons were daily transported thereto, among them a large number of lawless persons who were hostile to colored people, of whom appellee was one, their names being unknown to plaintiff, and who had long before said day entered into a conspiracy "to suppress, molest, assault, and insult colored people generally who might visit said park;" that in pursuance of such conspiracy said persons assaulted and beat appellee, and drove him from the park; that he and his companion demeaned themselves in a lady-like and gentlemanly manner, but upon arriving at the park were set upon by a large number of white boys and young men, appellee being assaulted and beaten by them; that appellant had, and had had for a long time prior to said day, full notice and knowledge of said conditions, and of the unlawful purposes aforesaid, and of acts of violence committed thereunder, but took no steps to prevent such conduct; that early in the afternoon of said day said lawless men and boys began marching and drilling openly in said park preparatory to an attack upon any colored male person who should be found there later, appellant taking no steps to prevent such conduct or to notify colored people of the danger, although it had knowledge thereof; that neither appellant nor its officers made any objection to the open and notorious gathering of white men and boys for the unlawful purpose stated; that it was negligent and indifferent in not employing and using a sufficient number of guards and policemen to maintain the peace; that two of its guards or policemen aided and abetted the wrong done appellee by standing by while he was being unmercifully beaten by said crowd of lawless white men and boys, and offering him no assistance, although they were able to do so, and could have prevented injury to

him. "Wherefore, by reason of the matters therein stated, the plaintiff has been damaged," etc. The second paragraph of complaint is somewhat more extended than the first one, but for the purpose of this opinion the statement made is sufficient.

The pleading charges appellant with notice of the alleged conspiracy, with acquiescence therein, and, by its guards or policemen, with passive participation in the actual assault made upon appellee. "When one expressly or by implication invites others to come upon his premises, whether for business or any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the place reasonably safe for the visit." Cooley, Torts (2d ed.), 718; *Howe* v. *Ohmart*, 7 Ind. App. 32, 38; *Richmond, etc., R. Co.* v. *Moore*, 94 Va. 493, 37 L. R. A. 258; *North Manchester, etc., Assn.* v. *Wilcox*, 4 Ind. App. 141; *Penso* v. *McCormick*, 125 Ind. 116, 21 Am. St. 211.

No case has been cited or found where the premises upon which the injury complained of occurred, and to which the complainant came by invitation, were made unsafe through a conspiracy of the nature set up herein. Danger usually has been attributed to some defect in the premises themselves. But as a matter of principle it is quite as reprehensible to invite one knowing that an enemy is awaiting him with intent to assault and beat him as it would be to invite him without having made the floor or the stairway secure. One attending an agricultural fair in response to a general invitation extended to the public has been awarded damages against the association where his horse was killed by target shooting upon a part of the ground allowed for such purpose. *Conradt* v. *Clauve*, 93 Ind. 476, 47 Am. Rep. 388.

Recoveries have also been sustained: When spectators rushed upon a race-track, causing a collision between horses

being driven thereon. *North Manchester, etc., Assn.* v. *Wilcox,* 4 Ind. App. 141. When an opening was left in a fence surrounding a race-track, through which one of the horses, running, went among the spectators. *Windeler* v. *Rush County Fair Assn.,* 27 Ind. App. 92. Where horses were started on a race-track in opposite directions at the same time, causing collision. *Fairmount, etc., Assn.* v. *Downey,* 146 Ind. 503. Where a horse with a vicious habit of track bolting was permitted to run in a race, such horse bolting the track, causing injury. *Lane* v. *Minnesota, etc., Soc.,* 62 Minn. 175, 29 L. R. A. 708. Recognizing the rule of reasonable care to make the premises safe, a recovery was denied in the absence of any evidence of the immediate cause of a horse running through the crowds. *Hart* v. *Washington Park Club,* 157 Ill. 9, 29 L. R. A. 492. Where a street car company maintained a park as a place of attraction for passengers over its line, the falling of a pole used by one making a balloon ascension, under a contract, injuring a bystander, recovery was allowed, the rule being announced that the company must use proper care to protect its patrons from danger while on its grounds. *Richmond, etc., R. Co.* v. *Moore,* 94 Va. 493, 37 L. R. A. 258. Where a street car company maintained a large stage for exhibitions, in a pleasure resort owned by it, and made a written contract with a manager, by which the latter furnished various entertainments, among which was target shooting, one injured by a split bullet was allowed to recover, it being held that he might safely rely on those who provided the exhibition and invited his attendance to take due care to make the place safe from such injury as he received. The question of due care being one for the jury. *Thompson* v. *Lowell, etc., St. R. Co.,* 170 Mass. 577, 40 L. R. A. 345; *Curtis* v. *Kiley,* 153 Mass. 123.

The duty of common carriers to protect their passengers from injury on account of unlawful violence by persons not connected with their service has frequently furnished

material for judicial consideration. The New Jersey court of errors and appeals approved an exhaustive and carefully considered opinion delivered by the supreme court of that state to the effect that a passenger who, while attempting to have her baggage checked, was knocked down and injured by cabmen, in no sense servants of the carrier, scuffling on a passageway under its control, might recover against it. *Exton* v. *Central R. Co.,* 63 N. J. L. 356, 56 L. R. A. 508. In what seems to have been a pioneer case, it was held by the supreme court of Pennsylvania in 1866, that it was the duty of the trainmen on a passenger-train to exert the forces at their disposal to prevent injury to passengers by others fighting in the car. *Pittsburgh, etc., R. Co.* v. *Hinds,* 53 Pa. St. 512. Ten years later the supreme court of Mississippi, after very exhaustive arguments by eminent counsel of national reputation, reached the same conclusion. *New Orleans, etc., R. Co.* v. *Burke,* 53 Miss. 200.

Without further elaboration it may safely be said that the unusual character of an alleged peril, from which it is averred the appellant did not use due care to protect its visitors, does not affect the right of recovery, it being otherwise justified. The demurrers were therefore correctly overruled.

Evidence was introduced of other prior assaults at said park upon colored persons, and articles previously published by daily newspapers in the city describing such occurrences were also admitted. In order to determine whether appellant used due care, it was essential to show its knowledge or means of information relative to the conditions alleged to exist, rendering it dangerous for appellee to visit the park. The evidence of similar occurrences was competent as tending to show notice of the conditions. *Toledo, etc., R. Co.* v. *Milligan,* 2 Ind. App. 578; *City of Delphi* v. *Lowery,* 74 Ind. 520, 39 Am. Rep. 98; *City of Goshen* v. *England,* 119 Ind. 368, 375.

The facts upon which appellant's liability depends otherwise than heretofore considered were questions for the determination of the jury. There was evidence tending to establish, and from which the jury might properly find, the existence of such facts.

Appellant and its officers appear to have displayed indifference to the conditions existing which it and they could not well help knowing. This may have been due to the idea, sometimes entertained, that as to acts of lawlessness it is a sufficient duty of citizenship to be indifferent. Such idea is entirely erroneous.

Judgment affirmed.